**WEEDIN, Commissioner of Immigration, v. CHIN GUIE.**

**No. 6931.**

Circuit Court of Appeals, Ninth Circuit.
Dec. 19, 1932.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellant.

Hugh C. Todd, of Seattle, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

CAVANAH, District Judge.

Chin Guie, who claims to have been born in China, arrived at the port of Seattle on December 15, 1931, and was denied admission into the United States. He never resided in the United States, but claims that he is a citizen of this country by virtue of being a foreign-born son of Chin Ah Yom, a native-born citizen thereof. Upon his petition for a writ of habeas corpus an order was made by the court below discharging him from the custody of the immigration authorities and from which the Commissioner of Immigration has appealed. The question is relationship, which brings us to the inquiry whether appellee is the blood son of Chin Ah Yom, an American-born citizen.

The argument is pressed upon us by the Commissioner that a fair hearing before the immigration officers was accorded to appellee, and that the board of special inquiry did not abuse the discretion committed to it by the statute, and rendered a decision which was not arbitrary or unreasonable or in disregard of the fundamental principles of justice. This issue of fact, as usual in this class of cases, is difficult of solution under the evidence. But, when we come to review the testimony, it does not indicate that the board of special inquiry acted arbitrarily or unfairly, and its acts were within the power conferred upon it, as recognized by the principle laid down in the case of Ngai Kwan Ying v. Nagle, 62 F.(2d) 166, recently decided by this court, as it discloses that appellee claims to have been born in China on January 17, 1914, and on May 18, 1920, his alleged father testified at Norfolk, Va., that he had four sons and one daughter, the sons being Chin Gim, 12; Chin Yok, 11; Chin Kee, 10; and Chin Lin, whose age was not

352

given. He also testified at that examination that he had an infant, but did not know its age or name or whether living or dead. No mention was then made by him of any son named Chin Wing or Chin Guie. On November 30, 1920, at Norfolk, Va., he further testified that he had six children, Chin Ho, daughter, 18; Chin Yok, son, 10; Chin Gim, son, 17; and Chin Kee, whose age he did not know; Chin Lin, 8; and Chin Wing. That he had never seen Chin Wing, and did not know his age, as he was born after and as a result of the last trip he took to China, leaving there in 1913. At that time he stated that he had five children, and Chin Wing was not then born. In the testimony given by him at those two examinations, he made no mention of appellee, who claims to have been born on January 17, 1914. The variance between the statements made in May and November, 1920, by the alleged father, who testified then as to the number, ages, and names of his sons and daughter, among whom appellee was not mentioned, and his testimony given at the present hearing, brings the case under the holding of this court in the case of Ng Lin Go v. Weedin, 5 F.(2d) 960, where the action of the board of special inquiry was upheld on the ground of such a variance.

The age of appellee, which he claims to be about eighteen at the time of his arrival in the United States in December, 1931, is not supported by the evidence, for the testimony shows that he is much older than that. His ignorance as to the affairs and movements of his alleged brothers, taken together with the testimony as to whether he is the son of Chin Ah Yom and other discrepancies and features in the evidence, justified the board in arriving at its conclusion.

A fair hearing was accorded appellee by the immigration officials, and he failed to sustain the burden of proof required of him to establish relationship; therefore the order of the lower court releasing him from custody of the United States Commissioner of Immigration is reversed.

Reversed.